ALBION LUMBER CO. v. INTER-OCEAN TRANSP. CO. et al.

(District Court, N. D. California, First Division. October 30, 1914.)

No. 15648.

SALVAGE ⊚⇒22—LIABILITY OF SALVORS—REFUSAL TO SURRENDER VESSEL IN TOW.

Respondent's steam schooner, in response to signals of distress, passed a line to a steamer laden with lumber, whose engines had become disabled in a storm, and commenced to tow her; the master and crew remaining on board. Being advised by wireless, the owners of the steamer sent out a representative with a tug and demanded possession of the steamer and cargo, but the schooner refused to cast off her line. The hawser afterward parted without fault of the schooner, the steamer drifted ashore, and her cargo was lost. *Held*, that the action of the schooner in refusing to throw off her own line was not a conversion of the cargo, which rendered her liable for its loss as an insurer, since the master and crew of the steamer were in full possession, and could themselves have cast off the line and taken one from the tug.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 52.]

In Admiralty. Suit by the Albion Lumber Company against the Inter-Ocean Transportation Company and B. W. Olson. On exceptions to libel. Exceptions sustained.

See, also, 240 Fed. 1019.

Andros & Hengstler, of San Francisco, Cal., for libelant.
Denman & Arnold, of San Francisco, Cal., for respondents.

DOOLING, District Judge. The libel herein sets forth that libelant, at Albion, on the coast of California, shipped on board the steam-

er Pomo certain lumber destined for San Francisco; that in consequence of a heavy storm the Pomo's engines became disabled, and the steam schooner Adeline Smith, in response to distress signals, came to her assistance, and, having passed her a line, commenced to tow her "with her cargo and all hands remaining on board of her"; that the managers of the Pomo, being apprised of her condition, notified the master of the Adeline Smith by wireless that the tug Dauntless would be sent out from San Francisco to take delivery and charge of the Pomo and her cargo, and requested said master to deliver the Pomo to said tug; that the said tug met the said Adeline Smith with a representative of said managers on board, and said representative, by word of mouth, demanded of the master of the Adeline Smith that he deliver to him and the said tug the management, possession, and control of the Pomo with her cargo, and "that respondents wrongfully refused to deliver the said Pomo or her cargo to her managers, or to surrender her into the keeping and control of the said tug Dauntless, but willfully continued to retain possession and control of the same"; that said tug was fully equipped to receive the said Pomo with her cargo, and to take control and possession and care thereof, and that the owners of the Pomo were then and there entitled to the possession thereof; that after such refusal to deliver the possession of the Pomo and her cargo to the Dauntless, the hawser, which connected the Pomo with the Adeline Smith, parted, and the Pomo drifted ashore and her cargo was totally lost; that the Inter-Ocean Transportation Company is the owner, and B. W. Olson the master, of the Adeline Smith. Libelant seeks a decree for $2,600, being the amount of the damages occasioned by the loss of cargo under the circumstances above briefly detailed.

There is no negligence charged; the theory of the libelant being apparently that the respondents were in such possession of the Pomo and her cargo that the mere refusal to surrender them to their owners constituted a conversion which rendered the respondents thereafter liable as insurers. But the master and crew of the Pomo were in full control of her, and could at any time have cast off the line by which she was connected with the Adeline Smith. It does not appear that there was any one on board the Pomo representing the Adeline Smith, and no possession of the former by the latter, other than the connecting hawser. It was not even the hawser of the Pomo which would have been left in the possession of the Adeline Smith, if those on board had seen fit to cast it off and take a line from the Dauntless. It is quite true that the owners were entitled to the possession of the Pomo and her cargo, and that the value of the salvage service of the Adeline Smith up to that time could not be lessened by a transfer of the tow to the Dauntless. But where the possession and control of the Pomo were so peculiarly in the hands of her master and crew, I cannot regard as a conversion the mere refusal on the part of respondents to cast off their own line, which was, after all, the only thing that they could have done to separate the Adeline Smith from her tow.

The exceptions to the libel are therefore sustained.